J. Richmond Page, J.
The above-named defendants were convicted of certain violations of the New York State Environmental Conservation Law, to wit: section 11-0901 (subd. 4, par. b, cl. [2]) and subdivision 2 of section 11-0931 before the Honorable Charles Jann, Town Justice, Town of Red House, Cattaraugus County, New York, on the 4th day of December, 1973.
All of the above-named defendants are duly enrolled members of the Seneca Nation of Indians. The appeal is based upon the claim that the Justice Court was without jurisdiction in this matter in that the New York State Environmental Conservaton Law was not applicable to members of the Seneca Nation hunting within the boundaries of the reservation of the Seneca Nation.
It is undisputed that the defendants were hunting within the area of the Allegany Indian Reservation taken in connection with the construction of the Allegany Reservoir Project. This area was expressly covered by the Congressional Act of 1964 (Public Law No. 88-533, 78 U. S. Stat. 738).
The defendants claim that by virtue of the treaty of November 11, 1794 the unrestricted right was granted to members of the Seneca Nation to hunt and fish upon their reservation. Although that treaty did not contain a specific reference to hunting and fishing rights, legal authorities have held universally that the existence of such rights is not to be conditioned on their explicit mention in Federal treaties and statutes. (Alaska Pacific Fisheries v. United States, 248 U. S. 78; Menominee Tribe of Indians v. United States, 388 F. 2d 998, affd. 391 U. S. 404.)
*836 .As a general rule, a State cannot enforce its game and fish laws within the domain of an Indian reservation situated within the borders of the State. Menominee Tribe of Indians v. United States (supra) held that a Federal treaty with an Indian tribe is, under article VI of the Constitution, the supreme law of the land, the exercise of rights on reservation lands guaranteed to a tribe by the Federal Government and is not subject to State regulation, at least in the absence of a cession by Congress.
Apparently the State of New York relies upon the Congressional act of January 5, 1927 (44 U. S. Stat. 932). This act enacted legislation to “ grant to the State of New York and the Seneca Nation of Indians jurisdiction over the taking of fish and game within the Allegany, Cattaraugus, and Oil Spring Indian Reservations. ’ ’ This act provided, as follows:
“ That on and after the passage of this Act, the laws of the State of New York (including laws hereafter enacted) relating to the taking of game and fish shall be applicable to the taking of game and fish within the Allegany, Cattaraugus, and Oil Spring Indian Reservations in the State of New York; except that —
“ (1) Any such law which discriminates against the Indians and in favor, of any other person shall not be applicable; and
“ (2) The Seneca Nation of Indians shall have the exclusive right to authorize, and to issue permits and licenses for, the taking of game and fish within such reservations.”
This act does not clearly specify whether New York law would be imposed on Indians, non-Indians or both. The Supreme Court has held without exception that Federal statutes affecting the right of Indian tribes must be construed liberally in their favor. (Choate v. Trapp, 224 U. S. 665.)
The act of 1927 must be interpreted as intending «to apply solely to non-Indians. To interpret this act to apply to the Indians also, would result in discrimination against the Seneca Nation of Indians. The act did not refer «to any other Indian reservations in the State of New York, of which there are several, nor has there been any other Congressional acts applying to any other Indian tribe in the State of New York.
To further support this interpretation, reference must be made to the Congressional act of July 2, 1948 (62 U. S. Stat. 1224) which contained the following provisions: “ That the State of New York shall have jurisdiction over offenses committed by or against Indians on Indian reservations within the State of New York to the same extent as the courts of the State have jurisdiction over offenses committed elsewhere within the *837 State as defined by the laws of the State: Provided, that nothing contained in this Act shall be construed to deprive any Indian tribe, band, }or community, or members thereof, hunting and fishing rights as guaranteed them by agreement, ¡treaty, or custom, nor require them to obtain State fish and game licenses for the exercise of such rights ” (Emphasis added.)
This act applied to all Indian tribes and the exception clause contains no intimation that its provisions were not intended to protect the hunting and fishing rights secured to the Seneca Nation by the treaty of 1794. This act is clear and subject to only one conclusion, Congress in 1948 concluded and implied that the hunting and fishing rights of New York Indian tribes were intact at that time, and pursuant to the treaty of 1794 the Seneca Nation’s rights were intact.
Again the Congressional act of August 31, 1964 established this right to the Seneca Nation. This act had to do with the taking of certain lands of the reservation by the United States in connection with the construction of the Kinzua Dam Project. This act (Public Law 88-533, § 9; 78 U. S. Stat. 738, 741) gave to the Seneca Nation the right among others: “ The right to hunt and fish on such lands, and to license hunting and fishing by nonmembers of the nation ”.
In interpreting the Congressional act of 1927 in view of the subsequent acts of 1948 and of 1964 the only conclusion to be drawn is that Congress never intended the act of 1927 to discriminate against the Seneca Nation so as to modify or abrogate a treaty right. Such intention must be clearly expressed and such statutes affecting the rights of Indian tribes must be liberally construed in their favor.
The State of New York had no jurisdiction to apply the Environmental Conservation Law against members of the Seneca Nation hunting within the reservation.
Judgments of conviction entered by the Justice Court of the Town of Bed House are reversed and the accusatory instruments dismissed.